**Nos. 2022-1018, 2022-1019**

# United States Court of Appeals for the Federal Circuit

HEALTH REPUBLIC INSURANCE COMPANY,
*Plaintiff-Appellee*

KAISER FOUNDATION HEALTH PLAN INC.,
and additional parties stated on continuation page,
*Plaintiffs-Appellants*

v.

UNITED STATES,
*Defendant-Appellee*

Appeal from the United States Court of Federal Claims, No. 1:16-cv-00259-KCD
Judge Kathryn C. Davis

---

COMMON GROUND HEALTHCARE COOPERATIVE,
on behalf of itself and all others similarly situated,
*Plaintiff-Appellee*

KAISER FOUNDATION HEALTH PLAN INC.,
and additional parties stated on continuation page,
*Plaintiffs-Appellants*

v.

UNITED STATES,
*Defendant-Appellee*

Appeal from the United States Court of Federal Claims, No. 1:17-cv-00877-KCD
Judge Kathryn C. Davis

---

## APPELLANTS' OPENING BRIEF

### SHEPPARD MULLIN RICHTER & HAMPTON LLP

Moe Keshavarzi
*mkeshavarzi@sheppardmullin.com*
333 South Hope Street
43rd Floor
Los Angeles, CA 90071-1422
Telephone: (213) 620-1780

John Burns
*jburns@sheppardmullin.com*
Matthew G. Halgren
*mhalgren@sheppardmullin.com*
501 West Broadway
19th Floor
San Diego, CA 92101-3598
Telephone: (619) 338-6500

*Counsel for Appellants*

## COVER SHEET CONTINUATION PAGES

Because it is impossible to list all Appellants on the cover sheet, Appellants provide these continuation pages. The full list of Appellants in Case No. 2022-1018 is as follows:

KAISER FOUNDATION HEALTH PLAN INC., KAISER FOUNDATION HEALTH PLAN OF GEORGIA, KAISER FOUNDATION HEALTH PLAN OF THE MID-ATLANTIC STATES, INC., KAISER FOUNDATION HEALTH PLAN INC. OF COLO., KAISER FOUNDATION HEALTHPLAN OF THE NW, GROUP HEALTH COOPERATIVE, HARKEN HEALTH INSURANCE COMPANY, HEALTH PLAN OF NEVADA, INC., OXFORD HEALTH PLANS (NJ), INC., ROCKY MOUNTAIN HEALTH MAINTENANCE ORGANIZATION, INCORPORATED, UNITEDHEALTHCARE BENEFITS PLAN OF CALIFORNIA, UNITEDHEALTHCARE COMMUNITY PLAN, INC., UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE LIFE INSURANCE COMPANY, UNITEDHEALTHCARE OF ALABAMA, INC., UNITEDHEALTHCARE OF COLORADO, INC., UNITEDHEALTHCARE OF FLORIDA, INC., UNITEDHEALTHCARE OF GEORGIA, INC., UNITEDHEALTHCARE OF KENTUCKY, LTD., UNITEDHEALTHCARE OF LOUISIANA, INC., UNITEDHEALTHCARE OF MISSISSIPPI, INC., UNITEDHEALTHCARE OF NEW ENGLAND, INC., UNITEDHEALTHCARE OF NEW YORK, INC., UNITEDHEALTHCARE OF NORTH CAROLINA, INC., UNITEDHEALTHCARE OF OKLAHOMA, INC., UNITEDHEALTHCARE OF PENNSYLVANIA, INC., UNITEDHEALTHCARE OF THE MID-ATLANTIC, INC., UNITEDHEALTHCARE OF THE MIDLANDS, INC., UNITEDHEALTHCARE OF THE MIDWEST, INC., UNITEDHEALTHCARE OF UTAH, INC., UNITEDHEALTHCARE OF WASHINGTON, INC., UNITEDHEALTHCARE OF OHIO, INC., ROCKY MOUNTAIN HEALTHCARE OPTIONS, INC., ALL SAVERS INSURANCE COMPANY, UNITEDHEALTHCARE INSURANCE COMPANY INC.

The full list of Appellants in Case No. 2022-1019 is as follows:

KAISER FOUNDATION HEALTH PLAN INC., KAISER FOUNDATION HEALTH PLAN OF GEORGIA, KAISER FOUNDATION HEALTH PLAN OF THE MID-ATLANTIC STATES, INC., KAISER FOUNDATION HEALTH

PLAN INC. OF COLO., KAISER FOUNDATION HEALTHPLAN OF THE NW, GROUP HEALTH COOPERATIVE, HARKEN HEALTH INSURANCE COMPANY, HEALTH PLAN OF NEVADA, INC., OXFORD HEALTH PLANS (NJ), INC., ROCKY MOUNTAIN HEALTH MAINTENANCE ORGANIZATION, INCORPORATED, UNITEDHEALTHCARE BENEFITS PLAN OF CALIFORNIA, UNITEDHEALTHCARE COMMUNITY PLAN, INC., UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE LIFE INSURANCE COMPANY, UNITEDHEALTHCARE OF ALABAMA, INC., UNITEDHEALTHCARE OF COLORADO, INC., UNITEDHEALTHCARE OF FLORIDA, INC., UNITEDHEALTHCARE OF GEORGIA, INC., UNITEDHEALTHCARE OF KENTUCKY, LTD., UNITEDHEALTHCARE OF LOUISIANA, INC., UNITEDHEALTHCARE OF MISSISSIPPI, INC., UNITEDHEALTHCARE OF NEW ENGLAND, INC., UNITEDHEALTHCARE OF NEW YORK, INC., UNITEDHEALTHCARE OF NORTH CAROLINA, INC., UNITEDHEALTHCARE OF OKLAHOMA, INC., UNITEDHEALTHCARE OF PENNSYLVANIA, INC., UNITEDHEALTHCARE OF THE MID-ATLANTIC, INC., UNITEDHEALTHCARE OF THE MIDLANDS, INC., UNITEDHEALTHCARE OF THE MIDWEST, INC., UNITEDHEALTHCARE OF UTAH, INC., UNITEDHEALTHCARE OF WASHINGTON, INC., UNITEDHEALTHCARE OF OHIO, INC., ROCKY MOUNTAIN HEALTHCARE OPTIONS, INC., ALL SAVERS INSURANCE COMPANY, UNITEDHEALTHCARE INSURANCE COMPANY INC.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 22-1018; 22-1019 |
| **Short Case Caption** | Health Republic Insurance Company v. US |
| **Filing Party/Entity** | Appellants Kaiser Foundation Health Plan, Inc., et al. |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: <u>January 20, 2022</u>

Signature: <u>/s/Moe Keshavarzi</u>

Name: <u>Moe Keshavarzi</u>

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| See additional pages | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|--|--|--|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable          ☑    Additional pages attached

|  |  |  |
|--|--|--|
| See additional pages |  |  |
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|--|--|--|
|  |  |  |
|  |  |  |

## FORM 9. Certificate of Interest – Additional Pages

The chart below contains the information requested by questions 1 and 3 of Federal Circuit Form 9.  The parent corporations for each represented entity are listed to the right of each entity.  In response to question 2, there are no real parties in interest other than the represented entities themselves.

| 1. Represented Entities | 3. Parent Corporations and Stockholders |
|---|---|
| Kaiser Foundation Health Plan, Inc. | None |
| Kaiser Foundation Health Plan of Georgia | Kaiser Foundation Health Plan, Inc. |
| Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. | Kaiser Foundation Health Plan, Inc. |
| Kaiser Foundation Health Plan Inc. of Colo. | Kaiser Foundation Health Plan, Inc. |
| Kaiser Foundation Healthplan of the NW | Kaiser Foundation Health Plan, Inc. |
| Group Health Cooperative | Kaiser Foundation Health Plan, Inc. |
| Harken Health Insurance Company | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |
| Health Plan of Nevada, Inc. | Sierra Health Services, Inc. |
| | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |
| Oxford Health Plans (NJ), Inc. | Oxford Health Plans LLC |
| | UnitedHealth Group Incorporated |

| 1. Represented Entities | 3. Parent Corporations and Stockholders |
|---|---|
| Rocky Mountain Health Maintenance Organization, Incorporated | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare Benefits Plan of California | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare Community Plan, Inc. | AmeriChoice Corporation |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare Insurance Company | UHIC Holdings, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare Life Insurance Company | Golden Rule Financial Corporation |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of Alabama, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of Colorado, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of Florida, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of Georgia, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| 1. Represented Entities | 3. Parent Corporations and Stockholders |
|---|---|
| UnitedHealthcare of Kentucky, Ltd. | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of Louisiana, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of Mississippi, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of New England, Inc. | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of New York, Inc. | AmeriChoice Corporation |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of North Carolina, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of Oklahoma, Inc. | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of Pennsylvania, Inc. | Three Rivers Holdings, Inc. |
| | AmeriChoice Corporation |
| | UnitedHealth Group Incorporated |

| | |
|---|---|
| UnitedHealthcare of the Mid-Atlantic, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

| 1. Represented Entities | 3. Parent Corporations and Stockholders |
|---|---|
| UnitedHealthcare of the Midlands, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |
| UnitedHealthcare of the Midwest, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |
| UnitedHealthcare of Utah, Inc. | UnitedHealthcare, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |
| UnitedHealthcare of Washington, Inc. | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |
| UnitedHealthcare of Ohio, Inc. | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |
| Rocky Mountain HealthCare Options, Inc. | Rocky Mountain Health Maintenance Organization, Incorporated |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |
| All Savers Insurance Company | Golden Rule Financial Corporation |
| | UnitedHealth Group Incorporated |
| UnitedHealthcare Insurance Company Inc. | UHIC Holdings, Inc. |
| | United HealthCare Services, Inc. |
| | UnitedHealth Group Incorporated |

In response to question 5 of Federal Circuit Form 9, there are no related cases that must be identified pursuant to Federal Circuit Rule 47.5(b).  The following appeal is identified pursuant to  Federal Circuit Rule 47.5(a):

(1) The title and number of the earlier appeal:
Common Ground Healthcare Cooperative v. United States, No. 20-1286

(2) The date of decision:
September 30, 2020

(3) The composition of the panel:
Judges Reyna, Wallach, and Chen

(4) The citation of the opinion in the Federal Reporter:
The order disposing of the appeal was not published in the Federal Reporter.

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................18

II.   STATEMENT OF JURISDICTION ......................................19

III.  STATEMENT OF THE ISSUES ...........................................19

IV.   STATEMENT OF THE CASE ...............................................19

    A.    Factual Background .........................................................19

    B.    Procedural History ...........................................................20

V.    SUMMARY OF ARGUMENT ...............................................25

VI.   ARGUMENT...........................................................................27

    A.    Standard of Review...........................................................27

    B.    The Claims Court Abused Its Discretion by Failing to Apply a Reasonable Multiplier under a Lodestar Cross-Check.......................27

        1.    A Lodestar Cross-Check Is an Important Component of a Fee Award, Especially in Megafund Cases ............................28

            (a)    This Court Should Bring Uniformity to the Courts Over Which It Has Jurisdiction With Respect to Lodestar Cross-Checks ................................28

            (b)    A Court's Equitable Power to Award Attorney Fees from a Common Fund Is Constrained by Fairness and Reasonableness .........................31

            (c)    Other Courts Recognize the Merits of a Lodestar Cross-Check, Especially in Megafund Cases ................34

        2.    A Lodestar Multiplier Exceeding 18 Is Far Too High ............38

        3.    The Inputs to the Lodestar Cross-Check Should Be Supported by Adequate Evidence ............................45

    C.    The Claims Court's Reasoning Was Unsound in Several Other Respects...........................................................47

        1.    The Claims Court Misunderstood the Nature of Its Task ........47

        2.    The Claims Court Abused Its Discretion in Its Analysis of the Hypothetical Fee that Would Have Been Negotiated in a Similar Case...................................49

3.    The Claims Court Abused Its Discretion by Failing to Enforce the Class Notice.........................................................52

VII.    CONCLUSION ...........................................................................53

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Alexander v. FedEx Ground Package Sys., Inc.*
  2016 WL 3351017 (N.D. Cal. June 15, 2016) ................................................34

*Americas Mining Corp. v. Theriault*
  51 A.3d 1213 (Del. 2012) ................................................................44

*In re Cendant Corp. PRIDES Litig.*
  243 F.3d 722 (3d Cir. 2001) ............................................34, 35, 36, 38

*In re Citigroup Inc. Bond Litig.*
  988 F. Supp. 2d 371 (S.D.N.Y. 2013) ................................................40

*City of Detroit v. Grinnell Corp.*
  495 F.2d 448 (2d Cir. 1974) ...........................................................32

*In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*
  365 F. Supp. 3d 685 (S.D.W. Va. 2019) ..............................................40

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
  2013 WL 12387371 (N.D. Cal. Nov. 5, 2013) ........................................41

*In re Enron Corp. Sec., Derivative & ERISA Litig.*
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ............................................41, 42

*Gattinella v. Michael Kors (USA), Inc.*
  2016 WL 690877 (S.D.N.Y. Feb. 9, 2016) ............................................40

*Geneva Rock Prod., Inc. v. United States*
  119 Fed. Cl. 581 (2015) .............................................................21, 29

*Haggart v. Woodley*
  809 F.3d 1336 (Fed. Cir. 2016) ...................................27, 28, 31, 32

*In re Home Depot Inc.*
  931 F.3d 1065 (11th Cir. 2019) ......................................................37

*Ibarra v. Wells Fargo Bank, N.A.*
  2018 WL 5276295 (C.D. Cal. Sept. 28, 2018) ......................................40

*Kane Cty., Utah v. United States*
    145 Fed. Cl. 15 (2019) ...................................................................29

*Keil v. Lopez*
    862 F.3d 685 (8th Cir. 2017).............................................................36

*Land of Lincoln Mut. Health Ins. Co. v. United States*
    892 F.3d 1184 (Fed. Cir. 2018) ........................................................23

*Loving v. Sec'y of Health & Hum. Servs.*
    2016 WL 4098722 (Fed. Cl. July 7, 2016) ......................................21

*Maine Community Health Options v. United States*
    140 S. Ct. 1308 (2020) ...............................................................22, 23

*Mercier v. United States*
    2021 WL 5027950 (Fed. Cl. Oct. 29, 2021) .................29, 39, 40, 49

*In re Mercury Interactive Corp. Sec. Litig.*
    618 F.3d 988 (9th Cir. 2010)............................................................48

*In re Merry-Go-Round Enterprises, Inc.*
    244 B.R. 327 (Bankr. D. Md. 2000)....................................39, 43, 44

*Moda Health Plan, Inc. v. United States*
    908 F.3d 738 (Fed. Cir. 2018)......................................................22, 23

*Moore v. United States*
    63 Fed. Cl. 781 (2005) ......................................................29, 33, 49

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap*
    *Antitrust Litig.* 768 F. App'x 651 (9th Cir. 2019)................36, 39, 45

*Perdue v. Kenny A. ex rel. Winn*
    559 U.S. 542 (2010).....................................................................30, 33

*Prandini v. Nat'l Tea Co.*
    585 F.2d 47 (3d Cir. 1978)...............................................................46

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*
    148 F.3d 283 (3d Cir. 1998).......................................................43, 49

*In re Rite Aid Corp. Sec. Litig.*
    396 F.3d 294 (3d Cir. 2005) .............................................................45

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*
    2005 WL 1213926 (E.D. Pa. May 19, 2005) ...................................43

*Trustees v. Greenough*
    105 U.S. 527 (1881) .......................................................................31

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ...................................................36, 39

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
    396 F.3d 96 (2d Cir. 2005) ........................................................36, 39

*In re Washington Pub. Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir. 1994) ..........................................................38

Statutes and Rules

11 U.S.C. § 328 ....................................................................................44

28 U.S.C. § 1295 ..................................................................................19

28 U.S.C. § 1491 ............................................................................19, 20

Fed. R. App. P. 4 ..................................................................................19

Pub. L. No. 113-235, § 227, 128 Stat. 2130, 2491 (2014) ...................20

R. Ct. Fed. Cl. 23 .................................................................................31

Agency Materials and Secondary Sources

77 Fed. Reg. 17,220, 17,220 (2012) ....................................................19

78 Fed. Reg. 15,410, 15,473 (2013) ....................................................20

79 Fed. Reg. 30,240, 30,260 (2014) ....................................................20

5 Newberg on Class Actions (5th ed. 2021) .......................32, 33, 38, 45

Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of A Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 Geo. J. Legal Ethics 1453 (2005) ........................................................................32, 33, 34

## I.    INTRODUCTION

Class Counsel Quinn Emanuel Urquhart & Sullivan LLP represented a class of health plans in challenging the federal government's failure to make required "risk corridor" payments under the Affordable Care Act.  The merits of the case were ultimately decided by the Supreme Court's resolution of a single legal question in a different case brought by a different law firm.  Due to that decision, the class in this case was awarded $3.7 billion.

Under the equitable common fund doctrine, Class Counsel deserves to be paid fairly for its work.  What Class Counsel does not deserve, however, is the astronomical award the Claims Court granted it: a full 5% of the class fund, which totals more than $184 million and works out to an hourly fee of more than $18,000.

The Claims Court erred most significantly by failing to conduct a lodestar cross-check, which Class Counsel had promised in the class notice.  Such cross-checks are critical to ensure fairness, especially in megafund cases like this. Giving Class Counsel the benefit of every doubt (notwithstanding its failure to submit any billing records), a cross-check reveals that the award amounts to a multiplier of more than 18.  This significantly exceeds the low single digit multipliers that courts have repeatedly held constitute the acceptable range.

Class Counsel's attorney fee award is untenable.  This Court should vacate the award and remand for entry of an award in a fair and reasonable amount.

## II.    STATEMENT OF JURISDICTION

The Claims Court had jurisdiction over these cases against the United States pursuant to 28 U.S.C. § 1491(a)(1).  This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) over these consolidated appeals from the Claims Court's Rule 54(b) judgments, which were entered on September 17, 2021.  Appx29-30.  The notices of appeal were timely filed on October 1, 2021.  Appx2257, Appx3808; R. Ct. Fed. Cl. 58.1(a); Fed. R. App. P. 4(a)(1)(B)(i).

## III.    STATEMENT OF THE ISSUES

1.    Did the Claims Court abuse its discretion in failing to conduct a proper lodestar cross-check on the attorney fee award?

2.    Did the Claims Court abuse its discretion in evaluating the reasonableness of the award?

## IV.    STATEMENT OF THE CASE

### A.    Factual Background

To encourage health plans to participate in "Health Benefit Exchanges" meant to make health coverage more broadly available, the Affordable Care Act established the risk corridors program, which provided for reimbursements to health plans that suffered losses in the exchanges.  77 Fed. Reg. 17,220, 17,220 (2012); 42 U.S.C. § 18062(b).  After the program began, however, Congress adopted an appropriations rider forbidding the Department of Health and Human

Services (HHS) from adequately funding the program. *See* Pub. L. No. 113-235, §

227, 128 Stat. 2130, 2491 (2014). HHS repeatedly acknowledged its statutory

obligation to make full risk corridors payments, even if it caused a program deficit.

*See, e.g.*, 78 Fed. Reg. 15,410, 15,473 (2013); 79 Fed. Reg. 30,240, 30,260 (2014).

However, HHS never followed through on its obligation to make these payments.

## B.    Procedural History

In February 2016, Class Counsel filed the complaint in *Health Republic*

*Insurance Company v. United States*, CFC Case No. 1:16-cv-259, challenging the

government's failure to make risk corridors payments. Appx62. Other prominent

law firms and health plans were also involved with the issue during the same

period, and these firms brought several other separate lawsuits in early to mid-2016

challenging the government's nonpayment. *See, e.g.*, *First Priority Life Ins. Co. v.*

*United States*, CFC Case No. 1:16-cv-587; *Moda Health Plan, Inc. v. United*

*States*, CFC Case No. 1:16-cv-649; *Blue Cross & Blue Shield of N.C. v. United*

*States*, CFC Case No. 1:16-cv-651; *Land of Lincoln Mut. Health Ins. Co. v. United*

*States*, CFC Case No. 1:16-cv-744; *Me. Cmty. Health Options v. United States*,

CFC Case No. 16-cv-967. The lawsuits were brought under the Tucker Act, the

statute that waives sovereign immunity for claims against the United States based

on a federal statute, like the Affordable Care Act provisions here. 28 U.S.C.

§ 1491(a)(1).

After the Claims Court denied the government's motion to dismiss, it appointed Quinn Emanuel as class counsel, appointed Health Republic as class representative, and certified the class as an opt-in class. Appx604-606. Class Counsel then sent a supplemental notice to prospective class members. In the notice, to induce health plans to join the class, Class Counsel made several important affirmative representations. First, it represented that 5% of the ultimate class recovery was the highest amount of attorney fees it would ever seek. Appx1389. Second, it represented that "[t]he fee may be substantially less than 5% depending upon the level of class participation represented by the final membership of the [class]." Appx1389.

Third, the notice reassured prospective class members that the fees "will be determined by the Court subject to . . . what is called a 'lodestar cross-check' (i.e., a limitation on class counsel fees based on the number of hours actually worked on the case)." Appx1389. The notice then cited two Court of Federal Claims cases that had considered the lodestar and had applied multipliers of 5.39 and 0.25 respectively. Appx1389 (citing *Geneva Rock Prod., Inc. v. United States*, 119 Fed. Cl. 581, 595 (2015) ("[A]n award 5.39 times the lodestar is reasonable under RCFC 23(h), given the complexity of the litigation, the diligent and skillful work by class counsel, and the pendency of the case for over six years."); *Loving v.*

*Sec'y of Health & Hum. Servs.*, 2016 WL 4098722, at *6 (Fed. Cl. July 7, 2016) (awarding 25% of the lodestar amount)).

In June 2017, Class Counsel filed a parallel complaint in *Common Ground Healthcare Coop. v. United States*, CFC Case No. 1:17-cv-877, to challenge the nonpayment for the 2016 benefit year.  Appx2260, Appx2279.  The class notice in *Common Ground* also contained the assurances about the 5% maximum attorney fee recovery, the impact of class member participation on the fee, and lodestar cross-check.  Appx2680.  Ultimately 153 health plans opted into the *Health Republic* class and 130 opted into the *Common Ground* class.  Appx1804.

Shortly thereafter, the nature of Class Counsel's role completely transformed because both cases were stayed pending the outcome of other cases, which other, unaffiliated counsel pursued separately.  Appx1699-1700, Appx2285.  Appeals by Moda, Blue Cross & Blue Shield of North Carolina, Land of Lincoln, and Maine Community Health Options ultimately made their way to the Supreme Court in the case *Maine Community Health Options v. United States*, 140 S. Ct. 1308 (2020).

During the stay, activity in *Health Republic* and *Common Ground* came to a halt.  At the Federal Circuit and Supreme Court, the petitioners in *Maine Community Health Options* were represented by the law firms Kirkland & Ellis, Brown & Peisch, Barnes & Thornburg, Massey & Gail, Reed Smith, Covington & Burling, and Crowell & Moring.  *See Moda Health Plan, Inc. v. United States*, 908

F.3d 738 (Fed. Cir. 2018); *Moda Health Plan, Inc. v. United States*, Pet'r's Br., 2019 WL 4235524 (Aug. 30, 2019).  Multiple firms submitted amicus briefs, including Husch Blackwell, Akin Gump Strauss Hauer & Feld, Deutsch Hunt, Kiernan PLLC, Faegre Baker Daniels, Pepper Hamilton, McKenna Long & Aldridge, and McDermott Will & Emery.  Appx2086, Appx2107; *Moda Health Plan*, 908 F.3d 738; *Land of Lincoln Mut. Health Ins. Co. v. United States*, 892 F.3d 1184 (Fed. Cir. 2018).  Twenty-four states and the District of Columbia, the National Association of Insurance Commissioners, Wisconsin Physicians Service Insurance Corporation, and WPS Health Plan filed other amicus briefs.  *See* Supreme Court Docket, Case No. 18-1023, *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/18-1023.html.  During the stay, Class Counsel also authored amicus briefs in support of the petitioners in *Maine Community Health Options* at both the Federal Circuit and the Supreme Court.  Appx2137, Appx2158.

Ultimately, the Supreme Court ruled in favor of the health plans, requiring that the government make the risk corridors payments.  *Maine Cmty. Health Options*, 140 S. Ct. at 1331.  Following the Supreme Court's decision, the two classes in the instant cases became entitled to the full amounts owed to them under the risk corridors program, which amounted to megafund recoveries of $1.9 billion in *Health Republic* and $1.8 billion in *Common Ground*.  Appx1749, Appx3481.

Because the cases turned on a question of law, Class Counsel never had to take a single deposition or otherwise engage in significant development of the factual record.

The merits of the cases resolved, Class Counsel moved for attorney fees. However, notwithstanding the assurances made in the class notice, Class Counsel did not calibrate its request based on the high number of participants in the classes and the amount of work it expended on the cases (which Class Counsel claimed totaled approximately $10 million in attorney time, billed at a blended hourly rate of $1,033). Appx1763, Appx1792. Instead, Class Counsel requested the maximum amount it had set in the class notice, which was a full 5% of the class fund, i.e., $184 million. Appx1795. Concerned by this large request, 34 class members objected. Appx1966, Appx1988. After briefing on the attorney fee request was complete, the cases were transferred to a different judge. Appx2251, Appx3775.

The Claims Court granted Class Counsel the 5% award it requested. Appx1, Appx27-28. The Claims Court based this decision on the consideration of seven factors that the Court of Federal Claims often uses when calculating fees based on a percentage-of-the-fund. Appx9. Despite the clear provision in the class notice unequivocally stating that there would be a lodestar cross-check, the court determined as a general matter that it was not advisable to conduct a lodestar cross-

check on a fee award taken from a common fund, and so it did not conduct a cross-check.  Appx10-11, Appx20-21.  The court also did not take account of the fact that the classes had high participation.  Appx20.  The court then entered Rule 54(b) judgments, and a subset of the Objecting Class Members—consisting of health plans in the Kaiser and United Healthcare families—appealed.  Appx29-30, Appx2257, Appx3808.

## V.    SUMMARY OF ARGUMENT

The common fund doctrine—which allows a court to use its equity powers to award attorney fees from a class fund—is meant to correct an unjust enrichment, not to give a windfall to lawyers.  However, the Claims Court's award to Class Counsel of $184 million, amounting to an hourly rate of $18,000, is the epitome of a windfall (particularly given the comparatively limited scope of work Class Counsel ultimately undertook).  Courts and scholars who have considered the issue have therefore persuasively argued that when, as here, a court makes an award from a common fund based on a percentage of that fund, the court should perform a lodestar cross-check to ensure that class counsel is not being paid too much or too little in light of the time and effort devoted to the case.  The broad consensus is that a multiplier in the low single digits can be reasonable.  There is no basis to conclude that the multiplier in excess of 18 effectively awarded in this case could

ever be reasonable, much less in the circumstances of this case, which, while presenting a novel legal issue, was not extraordinary.

This Court has not provided guidance on the use of the lodestar cross-check, and so judges in the Court of Federal Claims apply it or not based on their general beliefs on whether such cross-checks are useful. This results in a situation where the size of an attorney fee award can change by tens of millions of dollars based on the judge to which a case was randomly assigned. Such randomness in results should not be tolerated, and this Court should take this opportunity to provide instructions supporting use of the lodestar cross-check. It should then vacate the fee award and remand so that the Claims Court can apply the cross-check to this case. It is only by taking account of Class Counsel's investment of time in this case (as demonstrated by sufficient evidence) that an equitable result may be achieved.

Although the most significant problem with the Claims Court's fee award was its failure to use a lodestar cross-check, it also abused its discretion in a number of other ways. These included abdicating its responsibility to choose the most reasonable award and instead treating Class Counsel's requested fee as a default. The court also incorrectly concluded that the class members had agreed to a 5% fee award when in fact they had been told that such an award would only be

sought in certain circumstances that did not obtain here. These abuses of discretion also require vacating the award.

## VI.    ARGUMENT

### A.    Standard of Review

This Court reviews "the determination of reasonable attorney fees for abuse of discretion." *Haggart v. Woodley*, 809 F.3d 1336, 1354 (Fed. Cir. 2016). "However, errors of law in the award of attorney fees are corrected without deference." *Id.*

### B.    The Claims Court Abused Its Discretion by Failing to Apply a Reasonable Multiplier under a Lodestar Cross-Check

Objecting Class Members requested that the Claims Court subject any percentage-of-the-fund award to a lodestar cross-check as promised by the class notice. Appx1972. The Claims Court did not conduct a cross-check; it instead concluded that choosing a multiplier for a cross-check would be "a relatively arbitrary exercise." Appx24. It went on to state that "even if the Court applied the lodestar cross-check, a multiplier of 18–19 would, at least, not be outside the realm of reasonableness." Appx25. This constituted an abuse of discretion for a variety of reasons.

1.    **A Lodestar Cross-Check Is an Important Component of a Fee Award, Especially in Megafund Cases**

At least in the context of a megafund case where a class member has identified a concern with the lodestar multiplier, a rough lodestar cross-check is an important tool for ensuring uniformity and fairness.  Courts across the country have recognized the utility of this process, and the Claims Court abused its discretion by not employing it here.

(a)    **This Court Should Bring Uniformity to the Courts Over Which It Has Jurisdiction With Respect to Lodestar Cross-Checks**

In explaining its decision not to consider the lodestar, the Claims Court stated that "[t]he Federal Circuit has not mandated the use of one approach over the other.  Rather, binding precedent holds that this Court has discretion to choose between the percentage-of-the-fund or lodestar methods in a common fund case." Appx10.  Indeed, this Court has explained that "[i]n common fund cases, district courts have applied the lodestar method to determine the amount of attorney fees. . . .  Alternatively, as in this case, courts may determine the amount of attorney fees to be awarded from the fund by employing a percentage method." *Haggart*, 809 F.3d at 1355.  This Court has not, however, addressed whether a lodestar cross-check should or must be used when using the percentage-of-the-fund method.  In the absence of such guidance, the Claims Court held that, in common

fund cases, the percentage-of-the-fund method is inherently superior to the lodestar method, and lodestar cross-checks are not warranted.  Appx10-12.

The Claims Court noted that other judges on the Court of Federal Claims have applied a lodestar cross-check to percentage-of-the-fund awards, though it made no effort to distinguish those cases.  Appx10 n.3 (citing *Kane Cty., Utah v. United States*, 145 Fed. Cl. 15, 19 (2019) ("Finally, the Court has subjected Plaintiffs' fee request to a 'lodestar cross-check,' which compares the percentage fee 'against the fee that lead counsel would have been awarded on a lodestar basis' to ensure that the award is neither too low, nor too high."); *Geneva Rock Prod.*, 119 Fed. Cl. at 594 ("Moreover, a lodestar cross-check reveals that the court's recommended fee award reasonably reflects the hard work of counsel and avoids a windfall for plaintiffs' attorney.")).  In fact, another judge of the Court of Federal Claims applied a lodestar cross-check in a megafund case the month after the Claims Court entered the order challenged in the instant appeal.  *Mercier v. United States*, 2021 WL 5027950, at *11 (Fed. Cl. Oct. 29, 2021) (granting an award that was "approximately 2.95 times the lodestar amount, a very generous but reasonable recovery").  Even *Moore v. United States*, 63 Fed. Cl. 781, 789 (2005)—the case the Claims Court relied upon for the factors it used in evaluating the percentage-of-the-fund award—confirmed that its award was only "slightly above" the lodestar.

While lower courts have discretion in how they calculate reasonable fee awards, and while that discretion may result in some variation, the variation should not turn on each judge's personal beliefs about the general proposition of whether a lodestar cross-check has a place in common fund attorney fee awards. Rather, the law regarding when to use a lodestar cross-check should be subject to generally applicable guidelines. The alternative is the undesirable situation encountered here where a law firm's receipt of a windfall at the expense of the class it represents turns on one judge's disagreement with other judges of the same court about what the law should be.

This Court should take this opportunity to bring some standardization to the use of the lodestar cross-check in megafund cases. And, for the reasons provided in the sections that follow, that standardization should guide lower courts toward employing a lodestar cross-check. Indeed, as the Supreme Court has stated in the fee-shifting context, "the lodestar calculation is 'objective,' and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). These are values that are also desirable in common fund cases.

**(b)    A Court's Equitable Power to Award Attorney Fees from a Common Fund Is Constrained by Fairness and Reasonableness**

"In a certified class action, the court may award *reasonable* attorney's fees . . . ."  R. Ct. Fed. Cl. 23(h) (emphasis added).  Here, the fees were awarded under the common fund doctrine.  Appx8-9 & n.2.  "The common fund doctrine is rooted in the traditional practice of courts of equity and derives from the equitable power of the courts under the doctrines of quantum meruit and unjust enrichment.  Under the common fund doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to []  reasonable attorney[] fees from the fund as a whole.'"  *Haggart*, 809 F.3d at 1351-52; *see also id.* at 1358 ("[T]he common fund is an equitable doctrine established for the primary purpose of addressing inequities resulting from the unjust enrichment of class members at the expense of the litigating party.").  While it is important that lawyers be equitably compensated, it is also important that they not be awarded windfalls at the expense of the class.

> For the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so.  To this end courts must always heed the admonition of the Supreme Court in *Trustees v. Greenough* [105 U.S. 527 (1881)] when it advised that fee awards under the equitable fund doctrine were proper only 'if made with moderation and a jealous regard to the rights of those who are interested in the fund.'

31

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469-70 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

"At its heart, equity is about fairness." *Haggart*, 809 F.3d at 1359. A lodestar cross-check promotes fairness because it ensures "that the percentage award is not a windfall." 5 Newberg on Class Actions § 15:86 (5th ed. 2021). Thus, Newberg on Class Actions (the leading treatise in this field) observes that "[t]he benefits of the lodestar cross-check are several" and that "the value that the cross-check adds [is] underappreciated." *Id.* Other observers go further: one law review article, co-written by the former Chief Judge of the Northern District of California, describes a lodestar cross-check as an "ethical imperative." Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of A Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 Geo. J. Legal Ethics 1453, 1469-70 (2005).

The Claims Court asserted that a lodestar cross-check "'is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation,' and it creates incentives for inefficiency." Appx11. The Claims Court also described the process as "arbitrary." Appx11. Newberg observes that "costs of the lodestar cross-check are likely exaggerated." 5 Newberg on Class Actions § 15:86 (5th ed. 2021). With respect to the difficulty and time required for a cross-check,

"courts in nearly every circuit have held that, for the purposes of a cross-check, they need not scrutinize each individual billed hour, but may instead focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Id.* Similarly, if a court is simply considering the overall reasonableness of the fees, the incentive for attorneys to manipulate individual time entries is reduced. And as long as courts are only checking to ensure that the multiplier falls in a reasonable range, the inconsistency or arbitrariness of choosing a particular multiplier should not be a concern: a percentage-of-the-fund award need only be "reduced when the lodestar cross-check indicates an unreasonably high implied multiplier." Walker & Horwich, *Ethical Imperative*, *supra*, at 1470.

"Ultimately controlling is the requirement that the award of attorneys' fees be reasonable." *Moore*, 63 Fed. Cl. at 786. A lodestar cross-check allows a court to determine whether an award is reasonable and fair in light of the hours worked on a case. It also allows for fairness across cases; as the Supreme Court explained in a fee shifting case, "[s]etting attorney's fees by reference to a series of sometimes subjective factors place[s] unlimited discretion in trial judges and produce[s] disparate results," whereas the lodestar can help bring about "reasonably predictable results." *Perdue*, 559 U.S. at 551-52 (2010). Thus, in order to achieve fair outcomes, "courts evaluating an application for the award of a

percentage fee should as a matter of course perform a lodestar cross-check."

Walker & Horwich, *Ethical Imperative*, *supra*, at 1470.

### (c)    Other Courts Recognize the Merits of a Lodestar Cross-Check, Especially in Megafund Cases

In light of its clear merits, it should come as no surprise that courts around

the country have recognized that a lodestar cross-check is an important tool,

especially in megafund cases.  This is because when "a common fund is

extraordinarily large," a percentage-of-the-fund award "may result in a fee that is

unreasonably large." *Alexander v. FedEx Ground Package Sys., Inc.*, 2016 WL

3351017, at *1 (N.D. Cal. June 15, 2016).  "It is not one hundred fifty times more

difficult to prepare, try, and settle a $150 million case than it is to try a $1 million

case." *Id.*  A lodestar cross-check thus helps ensure that class counsel are fairly

compensated for the time they actually devote to a megafund case while guarding

against windfalls and unjust enrichment, which would be repugnant to the

equitable basis of the common fund doctrine.

Ever since convening its task force on court-awarded attorney fees many

years ago, the Third Circuit has been a leader in developing the law in this field.

*See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001).  As that

court noted, when a fee award is based on a percentage of the fund, "absent

unusual circumstances, the percentage will decrease as the size of the fund

increases." *Id.* at 736.  The court went on to explain that "'[t]he basis for this

inverse relationship is the belief that "[i]n many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel."' Accordingly, district courts setting attorneys' fees in cases involving large settlements must avoid basing their awards on percentages derived from cases where the settlement amounts were much smaller." *Id.* (citation omitted).

Applying these principles, the Third Circuit held that the district court's award of 5.7% of the fund was too high, even though it was on the low end of the range of other surveyed cases. *Id.* at 738. In reaching this holding, the court determined that the district court had abused its discretion by failing to consider the lodestar multiplier, which was either 7 or 10, depending on how it was calculated. *Id.* at 742. The court stated that "[e]ither of these multipliers [(7 or 10)] is substantially higher than any of the multipliers in the cases charted above, which range from 1.35 to 2.99, and is also significantly higher than the 'large' 5.1 multiplier" the court had questioned in a different case. *Id.* By failing to justify such a high lodestar multiplier, "the District Court strayed from all responsible discretionary parameters." *Id.* Thus, the court of appeals vacated the award and provided direction on remand: "we strongly suggest that a lodestar multiplier of 3 (the highest multiplier of the cases reviewed above) is the appropriate ceiling for a

fee award, although a lower multiplier may be applied in the District Court's discretion." *Id.*

Other courts of appeals have also endorsed the lodestar cross-check. For example, in a megafund case involving a settlement exceeding $3 billion and a fee award of 6.5% of the fund, the Second Circuit explained, "[a]s a 'cross-check' to a percentage award, courts in this Circuit use the lodestar method. Here, the lodestar yields a multiplier of 3.5, which has been deemed reasonable under analogous circumstances." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (citations omitted).

Similarly, the Ninth Circuit recently held, "The district court must gather sufficient information so that the lodestar is a meaningful crosscheck of the percentage-of-the-fund method." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 654 (9th Cir. 2019); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). In other words, the cross-check must be carefully considered; it cannot merely be a rubber stamp.

To be sure, not every circuit requires use of the lodestar cross-check. *E.g.*, *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) ("Although not required to do so, the court verified the reasonableness of its award by cross-checking it against the

36

lodestar method" and "determined that the fee award corresponded to a lodestar

multiplier of 2.7," which "was in line with multipliers used in other cases . . . .");

*In re Home Depot Inc.*, 931 F.3d 1065, 1091 & n.25 (11th Cir. 2019) (noting that

"[c]ourts often use a cross-check to ensure that the fee produced by the chosen

method is in the ballpark of an appropriate fee" but clarifying that it did "not mean

to suggest that a cross-check is required" because "[a] lodestar cross-check is a

time-consuming exercise").  For the reasons explained above, however, Objecting

Class Members submit that the courts that do require (or strongly encourage) a

cross-check have the better argument, and that this Court should adopt that position

in order to promote predictability and fairness.

The Ninth Circuit has provided a useful illustration that sums up why

considering all relevant circumstances, including the lodestar multiplier, is so

important:

> It is not difficult to demonstrate why courts cannot rationally apply
> any particular percentage [of the common fund]—whether 13.6
> percent, 25 percent or any other number—in the abstract, without
> reference to all the circumstances of the case.  To illustrate the point,
> we need only assume that the . . . settlement fund was $1.4 billion
> rather than roughly $700 million.  Assume as well that all other
> variables remained constant—the merits of plaintiffs' case on the facts
> and the law, the skill and time of counsel required to develop the
> merits of the case in the litigation process, and counsel's hourly rates.
> Would Class Counsel still contend that 13.6 percent was a reasonable
> figure?  An award of 13.6 percent of the fund would give Class
> Counsel a fee of $200 million, double the fee they actually seek for
> their effort in this case.  Plainly, a fee of $200 million for the same

effort by counsel with the same level of skill would be a windfall
rather than a reasonable fee.

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir.
1994).

A lodestar cross-check is critical component in analyzing a percentage-of-
the-fund award, particularly in a megafund case. The Claims Court abused its
discretion by skipping this step.

### 2.    A Lodestar Multiplier Exceeding 18 Is Far Too High

The Claims Court held that "even if the Court applied the lodestar cross-
check, a multiplier of 18-19 would, at least, not be outside the realm of
reasonableness." Appx25. This position is contrary to authority: in fact, a lodestar
multiplier should be in the low single digits.

Based on data from around the country, Newberg on Class Actions explains
that "[e]mpirical evidence of multipliers across many cases demonstrates that most
multipliers are in the relatively modest 1-2 range; this fact counsels in favor of a
presumptive ceiling of 4, or slightly above twice the mean." 5 Newberg on Class
Actions § 15:87 (5th ed. 2021). Published circuit court decisions reflect similar
understandings of what is reasonable. As noted above, the Third Circuit has
"strongly suggest[ed] that a lodestar multiplier of 3 (the highest multiplier of the
cases [it reviewed]) is the appropriate ceiling for a fee award." *In re Cendant
Corp. PRIDES Litig.*, 243 F.3d at 742. The Second Circuit considered a multiplier

of 3.5 reasonable, citing with approval other cases that had determined ranges spanning from 1.35 to 4.5 to be appropriate. *Wal-Mart*, 396 F.3d at 123. The Ninth Circuit affirmed an award where the lodestar crosscheck yielded a multiplier of 3.65 based on "the substantial risk class counsel faced, compounded by the litigation's duration and complexity."[1] *Vizcaino*, 290 F.3d at 1051; *see also In re Nat'l Collegiate Athletic Ass'n*, 768 F. App'x at 653-54 (affirming an award where the lodestar crosscheck resulted in a multiplier of 3.66).

Staying within this range, a recent Court of Federal Claims decision rejected a percentage-of-the-fund award that would have resulted in a lodestar multiplier of 4.4 because such a large multiplier would constitute "a windfall to counsel, is not necessary to attract competent counsel to similar cases, and would necessarily be at the expense of the class members." *Mercier*, 2021 WL 5027950, at *11. The court instead selected a percentage resulting in a multiplier of 2.95, determining this was "a very generous but reasonable recovery" that "reflect[ed] the outstanding work of

---

[1] The Ninth Circuit provided an appendix detailing a survey of attorney fee awards in common fund cases, which found that most multipliers were between 1.0 and 4.0. *Vizcaino*, 290 F.3d at 1051 n.6, 1052-54. The survey included a single case with a double digit multiplier, *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000). *Id.* at 1052. For the reasons discussed later in this section of this brief, *Merry-Go-Round* is inapposite, but even if it were apposite, at more than four standard deviations from the mean among the cases surveyed by the Ninth Circuit, its 19.6 multiplier would still be an outlier by a huge margin. *See Vizcaino*, 290 F.3d at 1051 n.6, 1052-54.

class counsel in this case, the length of the case, and the risk to counsel of recovering nothing despite investing substantial time, effort, and money." *Id.*

Other courts regularly apply even lower multipliers—in the range between 1 and 2—in complex cases brought by exceptional counsel, who assumed significant risks, and expended substantial resources in pursuing the case. *Ibarra v. Wells Fargo Bank, N.A.*, 2018 WL 5276295, at *6 (C.D. Cal. Sept. 28, 2018) (explaining that a multiplier of 2.0 "is within the range most commonly applied in class actions resulting in common fund judgments"); *Gattinella v. Michael Kors (USA), Inc.*, 2016 WL 690877, at *1-2 (S.D.N.Y. Feb. 9, 2016) (emphasizing "complex issues of liability and damages," "significant risks," "substantial resources" expended, and "exceptional work," concluding that the requested percentage award was too high because it would result in a multiplier of 2.4 which was "higher than what other courts, including this one, have typically awarded," and instead awarding a percentage yielding a multiplier of 1.94); *In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 376, 379-80 (S.D.N.Y. 2013) (awarding fees that resulted in a 1.34 multiplier where "litigation was both broad in scope and complex," the case involved "risk of an unfavorable outcome brought on by changes in applicable case law," "the applicable law [wa]s far from simple," and the quality of counsel was "deserving of a substantial award," and collecting cases applying multipliers between 0.7 and 2.8); *In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,

365 F. Supp. 3d 685, 701 (S.D.W. Va. 2019) (approving a 5% award in a megafund MDL case only after confirming that the multiplier of 1.8 was in the acceptable range and citing cases approving of multipliers between 1 and 4). In fact, Class Counsel's fee expert Brian T. Fitzpatrick, Appx1810, has conceded that most multipliers are below 2, and the average multiplier is 1.62. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12387371, at *13 (N.D. Cal. Nov. 5, 2013) (noting that Fitzpatrick "reported that of the 192 fee awards studied where 'a lodestar cross-check and the lodestar multiplier was ascertainable, the mean and median multipliers were 1.62 and 1.30'").

Courts reserve multipliers above this range for the most trend-setting cases, pursued by class counsel efficiently and at significant risk. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 787-803 (S.D. Tex. 2008) shows how extraordinary a case must be to warrant a high multiplier of 5.2 and why the instant case is not extraordinary by comparison. *Enron* posed "extraordinary complexity and risk" as well as a "substantial financial burden." *Id.* at 790. Since every obvious culpable party had been shuttered, class counsel needed to pioneer a "a novel theory of scheme liability" to recover, and as a result there was a substantial risk of "little or no recovery." *Id.* at 791-93, 797. Nonetheless, class counsel made what was likely "the largest investment ever made in a single securities class action." *Id.* at 791.

The case, already "extremely complex," was made more complex because "in the course of th[e] litigation, various binding, higher-court decisions" made recovery "increasingly difficult." *Id.* at 788. The 6-year case involved "several hundred" fact depositions, "numerous" dispositive motions, "enormous energy and effort" on class certification issues, and pursuit through the district court, Fifth Circuit, and Supreme Court. *Id.* at 786-87. Additionally, an independent federal judge assigned to review the firm's billing records commented that he "would have expected the lodestar amount to be significantly higher," which showed that class counsel "was extremely efficient." *Id.* at 788. The court also found it notable that counsel acted virtually alone, distinguishing another case in which "three firms" had been involved. *Id.* at 803. Moreover, class counsel's efforts were thwarted by separate criminal and bankruptcy matters that eroded time and assets and complicated discovery. *Id.* at 772, 791-92.

None of the extraordinary circumstances that drove the *Enron* multiplier of 5.2 is present here. Class Counsel did not make "the largest investment ever made," an independent judge did not declare that it was "extremely efficient," it did not pursue a dwindling pool of funds, it was not thwarted by separate bankruptcies and criminal actions, it did not take hundreds of depositions, and it had considerable support from other lawyers who pursued their own cases for their own clients all the way to the Supreme Court.

In light of all of the above authority, the effective multiplier of more than 18 the Claims Court awarded is astronomical and unjustified.  In holding that a multiplier exceeding 18 would be reasonable (if it were to conduct a lodestar cross-check, which it didn't do), the Claims Court cited three cases with high multipliers, though it did not provide any discussion as to why these cases were germane. Appx24-25; *cf. In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 340-41 (3d Cir. 1998) ("[C]ourts must take care to explain how the application of a multiplier is justified by the facts of a particular case.").

First, the Claims Court cited *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005).  In that case, the court acceded to a 15.6 multiplier after making clear that the vast majority of megafund multipliers are between 1 and 2.95, noting that "[n]ot one member of the Settlement Class, which is made up of approximately 90 sophisticated businesses, objected to the" award, and emphasizing the "extraordinary support Plaintiffs have shown for counsel's request for fees," including that the general counsel of one class member submitted a declaration advocating for an even higher fee. *Id.* at *16-18.

Second, the Claims Court cited *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000).  *Merry-Go-Round* was not a class action, but rather was a bankruptcy proceeding brought under a set contingency fee agreement

that the court and bankruptcy trustee had approved in advance under 11 U.S.C.

§ 328(a). *Id.* at 332. As a result, the court declined to use a lodestar analysis. *Id.*

at 335. The question in *Merry-Go-Round* was whether the contingency fee, which

resulted in a 19.6 multiplier, was so high that it was unethical under the Rules of

Professional Conduct. *Id.* at 335, 338. The court found that the award did not

violate that different test. *Id.* at 341.

Third, the Claims Court cited *Americas Mining Corp. v. Theriault*, 51 A.3d

1213, 1252 (Del. 2012), which involved a multiplier of 66. However, as the

Claims Court acknowledged, in that case no lodestar cross-check was conducted.

*Id.* at 1257; Appx25.

The fact that a handful of lower courts over the course of time have awarded

extraordinary multipliers is not a sufficient reason to depart from the multiplier

range that courts apply in the vast majority of cases. The Claims Court provided

no basis to conclude that these outlier cases provide a basis for declining to follow

the large number of megafund cases described above, including published federal

appellate decisions setting the acceptable multiplier range in the low single digits.

It was an abuse of discretion for the Claims Court to conclude that, if it were to

conduct a cross-check (which, again, it did not do), a multiplier exceeding 18

would be reasonable. Accordingly, this Court should instruct that, when the

Claims Court conducts a lodestar cross-check on remand, the multiplier should be

within the range generally recognized as acceptable, i.e., generally 1 to 2, and certainly no higher than 4.

### 3.    The Inputs to the Lodestar Cross-Check Should Be Supported by Adequate Evidence

For purposes of a cross-check, courts "need not scrutinize each individual billed hour, but may instead focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." 5 Newberg on Class Actions § 15:86 (5th ed. 2021). Accordingly, class counsel need not necessarily submit the same level of evidence in support of a cross-check as it would if the lodestar were being used to set the fee award in the first instance. However, the court assessing a fee request must still "gather sufficient information so that the lodestar is a meaningful crosscheck of the percentage-of-the-fund method." *In re Nat'l Collegiate Athletic Ass'n*, 768 F. App'x at 654. That means, at a minimum, "a summary of the hours expended by all counsel at various stages"; this is necessary because "lawyers have an incentive to increase their hours for cross-check purposes." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 n.16 (3d Cir. 2005).

Class Counsel's evidence does not meet even this low threshold. The sum total of Class Counsel's evidence about the fees expended is contained in this single paragraph in a declaration:

> To date, including both the *Health Republic* and *Common Ground* matters, Quinn Emanuel attorneys have worked almost 10,000 hours on these cases, at a blended rate of approximately $1,033 per hour. The Quinn Emanuel partners who have billed more than 100 hours on this matter have billed at rates ranging from $870 to $1,250 per hour. The Quinn Emanuel associates who have billed more than 100 hours on this matter have billed at rates ranging from $600 to $905 per hour. Moreover, to date, Quinn Emanuel paralegals, litigation support staff, and summer associates have worked over 400 hours on these matters at a blended rate of approximately $325 per hour. In total, Quinn Emanuel's lodestar on the *Health Republic* and *Common Ground* cases is over $10 million.

Appx1806-1807.

This estimate doesn't even purport to disclose the precise total number of hours billed, much less does it disclose how many hours were billed at each stage of the litigation and by whom. The claimed amount of time—"almost 10,000 hours"—is substantial, especially for a case that was stayed before any significant discovery occurred. However, without a more detailed breakdown, it is impossible to meaningfully engage with Class Counsel's request. Moreover, it is impossible to know whether Class Counsel's time was spent on tasks that may be factored into the lodestar. *See, e.g., Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978) (holding that the common fund doctrine does not permit including time spent pursuing attorney fees in the lodestar). It was therefore an abuse of discretion for the Claims Court to accept Class Counsel's evidence as sufficient. On remand, the Claims Court should be directed to either insist on adequate evidence or reduce the lodestar in recognition of Class Counsel's failure to submit sufficient proof.

\*     \*     \*

The Claims Court should have conducted a lodestar cross-check, it should have limited its award to the accepted range of multipliers, and it should not have accepted Class Counsel's cursory evidence of its time spent on this case. These failures constituted an abuse of discretion which must be corrected on remand.

## C.    The Claims Court's Reasoning Was Unsound in Several Other Respects

The most significant defect in the Claims Court's order was its failure to conduct a meaningful lodestar cross-check as promised by the class notice and supported by the weight of authority. However, there were several other aspects of the order that constituted abuses of discretion. These also merit vacating the award.

### 1.    The Claims Court Misunderstood the Nature of Its Task

The Claims Court seemed to conceive of its task as to take Class Counsel's requested fee as presumptively reasonable and then ask whether any of seven factors warranted a "reduction" in that request. *E.g.*, Appx13 ("The quality of Class Counsel is essentially undisputed here, and the Court finds nothing in this category that justifies a reduction in the requested fee."). Instead, the Claims Court should have recognized that, while Class Counsel's requested fee represented the upper limit of what it could award, it had an independent duty to protect the interests of the class and identify the fairest amount:

> During the fee-setting stage of common fund class action suits such as this one, plaintiffs' counsel, otherwise a fiduciary for the class, becomes a claimant against the fund created for the benefit of the class. This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, *the district court must assume the role of fiduciary for the class plaintiffs. As a fiduciary for the class, the district court must act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.*

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (cleaned up; emphasis added).

The Claims Court concluded that the Objecting Class Members' proposed fee award was too low. Appx22-23. That determination did not, however, mean that Class Counsel's request was reasonable or fair; the Claims Court still had a duty to scrutinize the request and "act with a jealous regard to the rights of" the class members. Nevertheless, the Claims Court seemed to treat the fee award process as a baseball arbitration, and having rejected the Objecting Class Members' proposal, it defaulted to Class Counsel's request. *See* Appx22-23. Disclaiming its duty as a fiduciary for the class, the Claims Court determined that "there is little reason for the Court to step in to protect the interests of sophisticated entities who made a considered decision to join these cases." Appx21. This was an abuse of discretion.

2.    **The Claims Court Abused Its Discretion in Its Analysis of the Hypothetical Fee that Would Have Been Negotiated in a Similar Case**

"The Federal Circuit has not specified what considerations govern the assessment of the reasonableness of fee requests in common fund cases." *Mercier*, 2021 WL 5027950, at *9.  In the absence of such guidance, the Claims Court joined other judges on the Court of Federal Claims in relying on a multi-factor test, which considers, among other things, "the fee that likely would have been negotiated between private parties in similar cases."  Appx9 (quoting *Moore*, 63 Fed. Cl. at 787).

The Third Circuit has called into question the utility of this factor in megafund cases:

> We question the significance of this inquiry to class action lawsuits of this magnitude.  While such private fee arrangements might be appropriate in smaller class actions or litigation involving individual plaintiffs, we do not believe they provide much guidance in cases involving the aggregation of over 8 million plaintiffs and a potential recovery exceeding $1 billion.

*In re Prudential Ins. Co*, 148 F.3d at 340.  Comparing percentages awarded in large fund cases risks papering over potentially critical differences between the cases and therefore simply may not be useful.  *Cf.* Appx18.

But even if this factor might have the potential to be helpful, the Claims Court's evaluation of this factor was defective.  The Claims Court put great weight on the fact that members joined the class with knowledge of the 5% cap Class

49

Counsel had promised: "Objectors' affirmative choice to join these cases and pay, at most, the five percent fee identified in the class notices points strongly in favor of approving Class Counsel's fee." Appx20. This, however, ignores the other half of Class Counsel's assurance: that "[t]he fee may be substantially less than 5% depending upon the level of class participation represented by the final membership of the [class]" and that the fees "will be determined by the Court subject to . . . a 'lodestar cross-check' (i.e., a limitation on class counsel fees based on the number of hours actually worked on the case)." Appx1389, Appx2680. In other words, the class members did not join the class with an understanding that Class Counsel would get 5% of the fund no matter what. Rather, the class members joined the class with an understanding that Class Counsel would get 5% of the fund only if the class was not big enough and if the court concluded that Class Counsel actually worked enough hours to merit that award based on a lodestar cross-check. It was illogical for the Claims Court to reason that class members who found Class Counsel's whole promise reasonable would also have found half of the promise reasonable. As it turned out, Class Counsel did achieve substantial class participation (although it may have hoped for even more), and the "almost 10,000 hours" Class Counsel worked were not nearly enough to merit an award of 5% of the fund (i.e., more than $184 million).

The Claims Court compounded its error when it stated: "As the language of the notices makes clear, however, a reduction was not guaranteed. Nor would Class Counsel have authority to make such a guarantee because the ultimate decision to reduce a requested fee percentage, if at all, rests within the Court's discretion—whether based on class participation or through use of the lodestar cross-check." Appx20. But of course Class Counsel had authority to represent that it would seek different awards in different circumstances; it simply decided not to adhere to its representation. And again, the 5% award was not a default starting point to be "reduced"; rather, it was a cap that would only be reached in certain circumstances, and those circumstances did not end up materializing.

The Claims Court also stated that the fee paid to Class Counsel is lower than what the Objecting Class Members would have paid if they had pursued their claims individually. Appx21. First, that isn't correct: under the Claims Court's fee award, Class Counsel will receive more than $19 million from United's portion of the common fund, and Class Counsel will receive more than $34 million from Kaiser's portion of the common fund. *See* Appx2244-2250, Appx3770-3774. Both amounts are significantly higher than Class Counsel's claimed $10 million in hourly fees for this case. Thus, either of these entities would have been much better off hiring Quinn Emanuel separately and paying it an hourly fee than they are under the Claims Court's award in this class action. Second, it does not make

sense to deem a class counsel's fee award reasonable on the ground that it is lower than what a single party would have paid if proceeding individually. In many class actions, the claims are so small that the cost of individual representation would significantly exceed the value of each individual's claim; in those cases, representation by class counsel is always more economical. Even in cases where each party's claim is larger, the simple fact that it is more efficient to proceed as a class than individually does not support the inference that a particular class counsel fee award is per se reasonable. The Claims Court abused its discretion by basing its decision in part on this faulty reasoning.

### 3. The Claims Court Abused Its Discretion by Failing to Enforce the Class Notice

When Class Counsel failed to live up to its end of the bargain, the Claims Court should have embraced its role as a fiduciary of the class and, as specified by the class notice, it should have entered an award that took account of the large class participation and the lodestar. It did neither.

As Class Counsel conceded before the Claims Court, the *Health Republic* and *Common Ground* class members comprise "one-third of the total value of all risk corridors claims," representing "by orders of magnitude the largest contingent . . . represented by any law firm in risk corridors litigation." Appx1804. According to the class notice, this type of class participation is precisely the circumstance that should have made the fee award "substantially less than 5%."

Appx1389, Appx2680.  Class Counsel says it was hoping for even broader participation.  Appx2196.  Even if that's so, the fact remains that the class attracted enough members to generate a multi-billion dollar fund.  If the size of the class was to be taken into account when calculating the fee, that should be a large enough class to move the fee down from the 5% cap.

As for the lodestar cross-check, this should have been done for the reasons described *supra* Part VI(B).  The fact that Class Counsel specifically told prospective class members that there would be a lodestar cross-check in order to induce them to join the class simply underscores the error in the Claims Court's failure to conduct a cross-check.

## VII.  CONCLUSION

For the foregoing reasons, this Court should vacate the Claims Court's attorney fee award and remand for further proceedings so that the Claims Court may conduct a proper analysis and lodestar cross-check of the award.

Dated: January 20, 2022        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
                    *s/Moe Keshavarzi*
                MOE KESHAVARZI
                JOHN BURNS
                MATTHEW G. HALGREN
                Attorneys for Appellants

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1).  This brief contains 8,683 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: January 20, 2022        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                              By  _____*s/Moe Keshavarzi*_____
                                   MOE KESHAVARZI
                                   JOHN BURNS
                                   MATTHEW G. HALGREN
                                   Attorneys for Appellants